# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TIMOTHY W. BUTLER,
        Appellant,

      v.

DEPARTMENT OF THE ARMY,
        Agency.

DOCKET NUMBER
DA-1221-19-0077-W-1

DATE: January 20, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Timothy W. Butler</u>, San Antonio, Texas, pro se.

<u>G. Houston Parrish</u>, Esquire, Fort Knox, Kentucky, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied corrective action in his individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision.  The appellant's request for corrective action is GRANTED.

## BACKGROUND

¶2    Effective July 27, 2018, the agency removed the appellant from his GS-7 Human Resources Assistant position based on four charges of alleged misconduct.  Initial Appeal File (IAF), Tab 13 at 7-20.  He thereafter filed an IRA appeal in which he contended that the removal and the proposed removal that preceded it constituted reprisal for whistleblowing.  IAF, Tab 1.  The administrative judge found that the appellant established jurisdiction over the appeal.  IAF, Tab 28 at 1-2.

¶3    After a hearing, the administrative judge found that the appellant proved by preponderant evidence that a July 24, 2017 email disclosure was protected, but failed to prove that his June 1, 2018 administrative grievance was protected.  IAF, Tab 55, Initial Decision (ID) at 7-12.  She further found that the appellant proved by preponderant evidence that his January 5, 2018 communication with his congressional representative was protected activity.  ID at 12-13.  She found that both the proposed removal and removal constituted personnel actions within the meaning of 5 U.S.C. § 2302(a), and that the appellant proved by preponderant evidence that his protected activity[2] was a contributing factor in those personnel actions.  ID at 13-15.  She further found, however, that the agency proved by clear and convincing evidence that it would have taken the same actions absent any protected activity, and she denied the appellant's request for corrective action.  ID at 15-25.[3]

---

[2] Hereinafter, we use the term "protected activity" to refer both to the appellant's protected disclosure and to his protected communications with Congress.

[3] During the pendency of the appeal, Congress enacted the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 5721, 133 Stat. 1198, 2175 (2020 NDAA), which amended 5 U.S.C. § 2302(b)(8) by adding section 2302(b)(8)(C).  Thereunder, the 2020 NDAA expressly provides protection for disclosures to Congress under certain circumstances.  We need not consider the

¶4     The appellant petitions for review of the initial decision.  Petition for Review (PFR) File, Tabs 1-2.  The agency responds in opposition to the petition for review.  PFR File, Tab 4.

## ANALYSIS

¶5     In order to establish a prima facie case of reprisal for whistleblowing, the appellant must prove by preponderant evidence that he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).  *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).  The administrative judge here found that the appellant made a prima facie case of whistleblowing.  ID at 7-15.  This finding is supported by the record and we see no reason to disturb it.

¶6     Once the appellant makes out a prima facie case, the agency must show by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity.  *Webb*, 122 M.S.P.R. 248, ¶ 6.  In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

---

applicability or retroactivity of this expansion of section 2302(b)(8) because the appellant's disclosure to Congress would be protected under pre- and post-2020 NDAA law.

*Carr* factor 1

¶7        As to *Carr* factor 1, the administrative judge found that the agency possessed strong evidence in support of its charges.  The agency brought four charges against the appellant.  The first was that he violated an agency policy when he met alone behind closed doors with a female cadet.  IAF, Tab 13 at 16. The administrative judge found that a number of other agency officials, including the proposing official, had also violated the policy and received mild discipline, leading her to the conclusion that the policy was not well-known or not consistently enforced.  ID at 16-17.  The third charge involves slightly less than 3 days of absence without leave (AWOL) in December 2017 and January 2018. IAF, Tab 13 at 16-17.  The agency has solid evidence in support of the third charge, but it was clearly not the most important factor in the decision to remove him.

¶8        Rather, the agency relied primarily on the second and fourth charges, both of which arise from the same set of facts.  The appellant was absent on Family and Medical Leave Act (FMLA) leave in early 2018 to undergo surgery.  When his FMLA leave expired and he did not return to work, the agency sent him a May 22, 2018 memorandum directing him to submit medical documentation to support his continued absence and/or to return to duty no later than June 5, 2018. IAF, Tab 13 at 21-23.  The appellant did not timely submit medical documentation and did not return to duty.  The agency charged him with failure to follow written instructions/orders with one specification for his failure to provide medical documentation and one specification for his failure to return to duty.  *Id.* at 16.  The agency also charged him with AWOL for 2 weeks beginning on June 4, 2018,[4] at which point it proposed to remove him.  *Id.* at 17.  Those facts are not disputed.

---

[4] Monday, June 4, 2018, was presumably a regularly scheduled duty day for the appellant, but the May 22, 2018 memorandum did not direct him to return to work until

¶9      The administrative judge found that the agency's order was lawful and the appellant was required to follow it.  ID at 17-18.  She did not consider, however, whether and to what extent the second and fourth charges were duplicative.  The Board has held that charges of AWOL and failure to follow instructions by failing to submit medical documentation to substantiate an alleged inability to work on those same dates are duplicative and should be merged.  *Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004).  Similarly, we see little difference, if any, between a failure to follow instructions to report for duty on a particular day and AWOL for failing to appear at work for that same day.

¶10     Similarly, it is not clear that the agency can prove the fourth charge (2 weeks of AWOL) by preponderant evidence.  An AWOL charge cannot be sustained if the appellant presents evidence to the Board that was not previously presented to the agency showing that he was incapacitated for duty during the relevant time period.  *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 18 (2003).  If the employee has sufficient sick leave to cover the period in question, the agency must grant the request when the employee provides administratively acceptable evidence of incapacitation, regardless of whether the employee has complied with applicable leave procedures.  *Id.*  Even when the employee lacks sufficient leave to cover his absence, an AWOL charge based on that absence cannot be sustained if the agency abused its discretion in denying the employee's request for leave without pay.  *White v. Department of Housing & Urban Development*, 95 M.S.P.R. 299, ¶ 17 (2003).

¶11     The appellant contends that he submitted medical documentation to the agency on July 10, 2018, IAF, Tab 2 at 20, and the agency acknowledges that it had the appellant's medical documentation in its possession at least by July 30, 2018, IAF, Tab 54 at 8.  The appellant's medical documentation, whenever he submitted it to the agency, is material to the charge of AWOL.  The agency

June 5.  Under the circumstances, it is not clear why the agency included June 4 in the AWOL charge.

withheld its evidence that it received the documentation on July 30, 2018, until the hearing when it used an email dated July 30 to attempt to impeach the appellant's testimony through the testimony of another witness. The agency's representative informed the administrative judge that the email was not included in the agency file or on its exhibit list, as it should have been, because the agency did not provide a copy to counsel. Hearing Recording (HR), Track 3. Under the circumstances, the administrative judge would have been well within her discretion to reject the document when the agency submitted it into the record after the close of the hearing. She did not do so, and she did not explain her reasons. She also declined to make an explicit finding as to when, precisely, the agency received the documentation. ID at 19-20. Under the circumstances, we find that the date on which the appellant provided his medical documentation to the agency is an unresolved issue of fact.

¶12    As to the contents of the medical documentation, the administrative judge found it insufficient to excuse the appellant's absence because it contained physical restrictions on driving and lifting that were not germane to the appellant's sedentary job duties. ID at 19-20. The medical documentation stated that the appellant was unable to work from May 15 to December 23, 2018, and imposed physical restrictions, as noted above. IAF, Tab 2 at 20. However, the record contains medical documentation covering earlier time periods when the appellant was on FMLA leave and not working. IAF, Tab 2 at 17-19. That documentation also excuses the appellant from work and recommends that he limit his driving, not sit for prolonged periods of time, and not lift heavy weights, all of which are common recommendations for someone with the appellant's medical condition. *Id.* Read in the context of the earlier medical documentation, one could conclude that, in the documentation that the appellant submitted to the agency, the appellant's doctor was making recommendations about activities the appellant should avoid generally, not merely limits on his job functions. The fact that the appellant's medical documentation mentioned physical restrictions that

were not applicable to his job is not a valid reason to reject it. Moreover, the documentation stated that the appellant was unable to work beginning on May 15, 2018, and, although it did not provide a reason, we know that the appellant had recently undergone surgery and surgery generally requires some time for recovery. IAF, Tab 2 at 20. The medical documentation was certainly ambiguous and perhaps warranted further inquiry, but we find that it is not obviously unacceptable.

¶13    We further note that there is no evidence in the record to show whether the appellant had exhausted his leave. He may well have, given that he had only recently been on extended FMLA leave,[5] but this would be a matter for the agency to prove, and it has not submitted any evidence in this regard.

¶14    Independent of proffering strong evidence in support of its charges, the agency must also submit strong evidence in support of its penalty determination. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012) (stating that "the agency must still prove by clear and convincing evidence that it would have imposed the *exact same penalty* in the absence of the protected disclosures") (emphasis in original). Here, the agency's penalty determination betrays some weaknesses. At the hearing, the agency proffered virtually no *Douglas*[6] testimony beyond pointing out that the appellant's absence had an adverse impact on the agency because others had to perform his duties and because determining whether he was going to report to work each day was disruptive and time consuming. HR, Track 4 (testimony of the deciding official).

¶15    In a "Brief Sheet," apparently prepared by the agency's human resources office for the benefit of the deciding official, the deciding official was informed that the appellant was a 9-year employee with no prior discipline. IAF, Tab 13

---

[5] The appellant testified that he applied for leave under the Leave Transfer Program, so he presumably had at best very little leave available to him. HR, Track 2 (testimony of the appellant).

[6] *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

at 12.  The deciding official's written *Douglas* analysis mentions that the appellant has no prior discipline but does not mention his length of service and states that there are no mitigating factors.  IAF, Tab 13 at 14-15.  In his most recent performance rating of record, the appellant was rated "Excellence" in two critical elements and "Success" in the two remaining critical elements,[7] with a summary rating of "Successful."  IAF, Tab 17 at 110-11.  Despite this good record of recent performance, the written *Douglas* analysis refers to the appellant's "sub-par performance" and his failure to correct his performance.  IAF, Tab 13 at 15.  The removal penalty is consistent with the agency's table of penalties, and with the penalty imposed on other employees, generally for longer periods of AWOL as discussed below, but the agency does not appear to have considered whether a lesser penalty might have had a corrective effect on the appellant's behavior.

¶16    Further, the written *Douglas* analysis stated that the appellant's misconduct caused "irreparable" damage.  IAF, Tab 13 at 15.  At the hearing, the deciding official explained that the reason for the policy against male employees having one-on-one closed-door meetings with female cadets is to reduce the possibility that something might happen that could cause irreparable harm.  HR, Track 4 (testimony of the deciding official).  There is no evidence, however, that anything untoward happened during the closed-door meeting underlying charge 1.  Thus, although there is certainly support for the proposition that the appellant's absences from the workplace caused extra work for others and that his failure to cooperate with his supervisor over leave matters had an impact on his working relationships, we see no support for the statement that the appellant's misconduct caused "irreparable" damage.

¶17    We also note that the deciding official denied the appellant's request for an extension of time to reply to the notice of proposed removal because the appellant

---

[7] The agency uses a four-level rating system.

presented his request at the last minute and did not provide an adequate reason for the request. IAF, Tab 17 at 47-48; HR, Track 4 (testimony of the deciding official). At the hearing, the deciding official testified that the appellant did not offer any reason why he needed an extension other than he wanted one and the deciding official was not required to grant an extension, so he did not grant one. *Id.*

¶18    In sum, there is an argument to be made that some of the agency's charges are duplicative; the appellant has evidence that he was incapacitated for duty that is at least equivocal, which the agency had in its possession at best *before* it removed the appellant and at worst 3 days *after* it removed the appellant, but which it inexplicably failed to provide to counsel, and failed to submit to the Board until after the hearing; the agency appears to have given little or no consideration to progressive discipline or to mitigating *Douglas* factors, and engaged in at least a little exaggeration on one of the aggravating factors; and, given the discretion to be strict or lenient in granting a request for an extension of time, it chose to be strict. None of this is to say that the agency's charges have no merit or that it would be unable to prove them by preponderant evidence. We find, however, that there are demonstrable weaknesses in its case. *Carr* factor 1 weighs against the agency.

*Carr* factor 2

¶19    The administrative judge found that the agency's witnesses testified credibly that they suffered no negative consequences from the appellant's protected activity and it played no part in either the proposed removal or the removal action. ID at 21-25. The Federal Circuit has cautioned that the Board interprets *Carr* factor 2 too narrowly when it focuses solely on the personal motives of the individual agency managers who may have been implicated by the employee's protected activity rather than on the agency's institutional motive to retaliate based on protected activity that implicates the perceived reputation of

the agency or agency component. *Robinson v. Department of Veterans Affairs*, [923 F.3d 1004](), 1019-20 (Fed. Cir. 2019); *Miller v. Department of Justice*, [842 F.3d 1252](), 1261-62 (Fed. Cir. 2016). In this regard, the record contains an email from the deciding official dated 4 days after the appellant made his first disclosure that chastised the appellant for going out of the chain of command and indicated that he should always inform his chain of command before he takes an issue out of the chain of command. IAF, Tab 17 at 46. At the hearing, the deciding official testified that the appellant should have informed his superiors that he was going to take his concerns outside the chain of command and that going outside the chain of command "slows things down" because the chain of command has to be consulted anyway. HR, Track 4 (testimony of the deciding official). The agency's interest in preserving the chain of command and the deciding official's interest in not being put in the position of having to answer to his superiors for those under his command who violate the chain of command betrays at least a slight motive to retaliate. *Carr* factor 2 weighs slightly against the agency.

### *Carr* factor 3

¶20    Turning to *Carr* factor 3, the administrative judge found that the agency submitted evidence that it has removed other employees for attendance-related charges, but did not submit any evidence as to whether these employees were whistleblowers. ID at 25 n.13. She concluded that the absence of evidence concerning how the agency treated similarly situated non-whistleblowers who committed similar misconduct meant that this factor was not a significant factor in the analysis. *Id.*

¶21    As the administrative judge correctly noted, the absence of any evidence concerning *Carr* factor 3 can, in appropriate circumstances, remove that factor from the analysis. *Miller*, 842 F.3d at 1262; *Whitmore*, 680 F.3d at 1374. However, this is not a case in which there is no evidence as to how the agency

treats other employees. The agency here submitted evidence showing that it removed four employees between August 2016 and July 2018 for attendance-related charges. IAF, Tab 33 at 7-40. Three of those removals involved substantially longer periods of absence than the appellant accumulated. There is no evidence in the record to explain why the agency decided to propose removal against the appellant after 2½ weeks of unexcused absence but waited 7 weeks to propose removal for another, and nearly a full year to propose removal for yet another employee. The record shows that the agency treated the appellant differently, but does not show the reason for the difference in treatment. Having submitted evidence concerning how it treated other employees, the agency took a risk in failing to fully explain the context of that evidence. *Cf. Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (stating that the "risk associated with having no evidence on the record" for a particular factor falls on the Government (quoting *Miller*, 842 F.3d at 1262)); *Miller*, 842 F.3d at 1262 (stating that the Government's failure to produce evidence on this factor "may be at the agency's peril" considering the Government's advantage in accessing this type of evidence (quoting *Whitmore*, 680 F.3d at 1374)); *Whitmore*, 680 F.3d at 1374 (holding that, to the extent evidence on *Carr* factor 3 exists, "the agency is required to come forward with all reasonably pertinent evidence"; the "[f]ailure to do so may be at the agency's peril"). We find, therefore, that *Carr* factor 3 weighs against the agency.

¶22    Based on the foregoing, we find that the agency failed to prove by clear and convincing evidence that it would have removed the appellant absent his protected activity.

## ORDER

¶23    We ORDER the agency to cancel the appellant's removal and to restore the appellant effective July 27, 2018. *See Kerr v. National Endowment for the Arts*,

726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶24        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶26        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶27        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
## COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages.  To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for
                          _____
                          Jennifer Everling
                          Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). ***Do not process online SF50s until notified to do so by DFAS Civilian Pay.\****

☐ 5) Certified timecards/corrected timecards. ***Do not process online timecards until notified to do so by DFAS Civilian Pay.\****

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.